WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00755-002-TUC-CKJ (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Cruz Maria Camacho, | |
| Defendant. | |

Before the Court is Defendant Cruz Maria Camacho's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 185) For the reasons that follow, Defendant's motion is denied, and this case remains closed.

**PROCEDURAL HISTORY**

On August 9, 2020, the Federal Public Defender filed a Motion for Appointment of Counsel Under General Order 20-28, which stated that it recommended that the Court appoint CJA counsel to assist Defendant in seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 183) On August 10, 2020, the Court granted the Federal Defender's request and appointed Attorney Frederick Carrillo to assist Defendant in seeking relief under § 3582(c)(1)(A). (Doc. 184) On September 9, 2020, with the assistance of counsel, Defendant filed a Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 185) On September 23, 2020, the Government filed its Opposition to Motion for Sentence Reduction. (Doc. 186) On October 22, 2020, the Court issued an Order requesting that the parties file supplemental briefing concerning whether

Defendant had exhausted her administrative remedies before filing her motion for sentencing relief. (Doc. 188) On November 11, 2020, Defendant filed her Supplemental Brief Regarding Defendant's Administrative Remedies. (Doc. 189) On November 12, 2020, the Government filed its Response to Defendant's Supplemental Brief Regarding Administrative Remedies. (Doc. 190)

On November 23, 2020, the Court received a Notice by Defendant, which indicated that the warden at FCI – Dublin had referred her to the Bureau of Prisons ("BOP") for home confinement on October 26, 2020. (Doc. 191) On December 8, 2020, the Court received an additional Notice from Defendant, which again indicated that she was referred for home confinement by the warden at FCI – Dublin. (Doc. 192) On December 10, 2020, the Court issued an Order acknowledging receipt of Defendant's notices and instructing the parties to submit a stipulation of dismissal or joint status report indicating the posture of Defendant's internal request for compassionate release within 14 days. (Doc. 193)

On December 23, 2020, the parties filed a Joint Status Report Re: Defendant's Internal Request for Compassionate Release, which stated that the recommendation to BOP for Defendant's home confinement was pending and that counsel suggest that the Court postpone ruling on Defendant's request for compassionate release until after February 1, 2021, at which time Defendant's status would be clearer. (Doc. 194) On January 6, 2021, the Court issued an Order instructing the parties to file a joint status report on February 1, 2021, and every 30 days thereafter, indicating the status of Defendant's internal request for compassionate release. (Doc. 195) On February 1, 2021, the parties filed their second Joint Status Report Re: Defendant's Prison Status, which indicated that defense counsel checked with Defendant's daughter and the BOP website to discern her incarceration status and that there had been no change in her status during the previous month. (Doc. 196)

On February 10, 2021, the Court issued an Order setting a telephonic status conference to discern the procedural posture of the warden's referral for Defendant's home confinement, as the parties' previous status report was "woefully inadequate in informing

it whether, when, and where the Bureau plan[ned] to place Defendant on home confinement." (Doc. 197) Within the Order, the Court instructed the Government to have the warden of FCI-Dublin and a representative from the BOP that had knowledge of the status of the warden's referral for Defendant's home confinement to also be present on the call. *Id*. at 3. Two days after issuance of the Order, the Government filed its Supplement to February 1, 2021 Status Report and Request to Vacate, which indicated that the BOP had denied the warden's referral for Defendant's home confinement on January 19, 2021, and that the denial of the warden's referral did not moot Defendant's motion for compassionate release with this Court. (Doc. 198)

On the morning of February 16, 2021, the date of the Court's pre-determined status conference, Defendant filed a Response to Government's Supplemental Status Report & Request to Vacate Hearing, which stated that defense counsel agreed with the Government's factual and procedural history and that he joined its request that the Court vacate the hearing and rule on the pleadings submitted. (Doc. 199) The status conference was held at 10:00 a.m. that day, during which time the Court learned that Defendant's referral for home confinement had been denied due to a disciplinary issue involving Defendant in April 2020, and that Defendant's internal request for home confinement would again be analyzed by the BOP in April 2021. During the status conference, the parties agreed that Defendant had exhausted her administrative remedies prior to filing her request for compassionate release with the Court. The parties also agreed that Defendant's request for compassionate release with the Court was ready for ruling. This Order follows.

**LEGAL STANDARD**

"In 2010, Congress enacted the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), to reduce the disparate treatment of offenders who dealt crack cocaine compared to offenders who dealt powder cocaine." *United States v. Kelley*, 962 F.3d 470, 471-72 (9th Cir. 2020) (internal citation omitted). On December 21, 2018, eight years after the Fair Sentencing Act, Congress adopted the First Step Act to implement various criminal-justice reforms. *Id*. at 472. "The Act was the culmination of several years of

congressional debate about what Congress might do to reduce the size of the federal prison population while also creating mechanisms to maintain public safety." Timothy A. Scott & Larry A. Burns, *Ninth Circuit Criminal Handbook* § 14.18[3] (2020).  Prior to the passage of the Act, only the Director of the BOP could file a motion for compassionate release on behalf of an inmate.

Section 603(b) of the First Step Act amended the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), with the intent of "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted).  The statute now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"  18 U.S.C. § 3582(c)(1)(A).

A court's reduction of a sentence under 18 U.S.C. § 3582(c)(1)(A) is extraordinary and reserved for "compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."  28 C.F.R. § 571.60.  The U.S. Court of Appeals for the Ninth Circuit has interpreted the First Step Act as "not permitting a plenary resentencing hearing" but instead allowing a district court to engage in a limited counterfactual inquiry.  *Kelley*, 962 F.3d at 475-76.  Notwithstanding a court's limited counterfactual inquiry, the Act itself grants federal courts broad discretion in determining whether to grant compassionate release.  *See* First Step Act, § 404(c), 132 Stat. 5194, 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to his section."); *United States v. Parker*, 461 F. Supp. 3d 966, 974 (C.D. Cal. 2020) (internal quotation marks, alterations, and citation omitted) ("The FSA grants broad discretion to the district courts in providing relief.").

The United States Sentencing Commission has issued a Policy Statement that outlines the process through which a court may analyze a request for a sentencing reduction under the compassionate release statute.  *See* U.S.S.G. 1B1.13.  First, to the extent they are

applicable, a court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id.* Second, a court must find that either "extraordinary and compelling reasons" warrant a sentence reduction; or that the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c). *Id.* Third, regardless of which determination the court has made in step two, it must find that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* Fourth, the court must also find that the reduction in sentence is consistent with the Commission's Policy Statement on the statute. *Id.*

Section 3582 of the First Step Act advises that before reducing a defendant's sentence for extraordinary and compelling reasons, the court must consider, to the extent they are applicable, the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013). In considering these factors, "[a court] should assess whether [the] factors outweigh the extraordinary and compelling reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D. N.Y. 2020) (quotation marks omitted).

## ANALYSIS

Defendant is fifty-eight years old, has high cholesterol, high blood pressure, digestion issues, and is diabetic. On January 23, 2019, Defendant pleaded guilty to one count of Conspiracy to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and was sentenced to forty-six months incarceration followed by thirty-six months of supervised release. The Indictment, to which Defendant pleaded

guilty, charged that Defendant assisted an international drug smuggling conspiracy by helping her son, Javier Duarte-Camacho, make arrangements for travel and lodging so that couriers could deliver drugs and collect payments. In her sentencing memorandum, Defendant acknowledged that she knew her son was involved in drug trafficking but denied that she knew what drugs were involved or contained in a suitcase that she provided to a courier. (Doc. 171 at 4) To date, Defendant has served a little over half (twenty-eight months) of her forty-six-month sentence.

In support of her motion for sentencing relief, Defendant argues that she qualifies for compassionate release and should be sentenced to "time served" because she suffers from a chronic medical condition, she fails to pose a danger to the community if released, and prior to the conviction for which she is currently incarcerated, she had a clean criminal history. (Doc. 185) In response, the Government argues Defendant's request should be denied because the § 3553(a) sentencing factors weigh against her request as does the fact that her underlying criminal conduct put the public at risk. (Doc. 186 at 4)

While the Court recognizes that Defendant's health condition may constitute an extraordinary and compelling reason to support compassionate release, it finds that relevant § 3553(a) sentencing factors weigh against her request. It also finds that compassionate release would undermine the goals of the Court's original sentence. At Defendant's sentencing hearing, the Court observed that guideline calculations were lower than Defendant's actual involvement in her son's drug conspiracy. The Court explained that Defendant's involvement was not a one-time incident, that the conspiracy was a large-scale international drug distribution organization, and that Defendant conceded that she was involved in the conspiracy—at times from her home—even though she was raising her grandchildren and taking care of her mother from the same location. After considering some of the same mitigating factors that Defendant offers here, the Court sentenced Defendant at the low end of the recommended guideline. As such, the Court finds that Defendant's original sentence was fair and that § 3553(a) sentencing factors weigh against her premature release. Accordingly, Defendant's motion for compassionate release is

denied.

**IT IS ORDERED:**

1. Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A), (Doc. 185), is DENIED.

2. This case remains closed.

Dated this 2nd day of March, 2021.

Honorable Cindy K. Jorgenson
United States District Judge